IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**LETSIE BASS**                                                                                          **PLAINTIFF**

v.                                            **Case No. 5:12-cv-00286-KGB**

**UNIVERSITY OF ARKANSAS**
**AT PINE BLUFF, ET AL.**                                                                **DEFENDANTS**

## ORDER

Before the Court is defendants' motion to strike (Dkt. No. 16). Defendants request that the Court strike plaintiff Letsie Bass's amended complaint because she filed it without defendants' consent or leave of the Court, as required by the Federal Rules of Civil Procedure (Dkt. No. 13). Ms. Bass has responded and requests to withdraw her amended complaint (Dkt. No. 18). Defendants' motion to strike is denied as moot, in view of Ms. Bass's request to withdraw her amended complaint (Dkt. No. 16). The Court strikes from the record Ms. Bass's amended complaint based on her request (Dkt. No. 13).

Also before the Court is Ms. Bass's motion to amend (Dkt. No. 19), which she filed simultaneously with her response to defendants' motion to strike. Defendants have responded (Dkt. No. 20), and Ms. Bass has replied (Dkt. No. 21). For the reasons set forth below, Ms. Bass's motion to amend is granted (Dkt. No. 19), and she has ten days from the entry of this Order to file her amended complaint.

### I.    Background

Ms. Bass brings this action against defendants, the University of Arkansas System (the "UA System"); Donald R. Bobbitt, President of the UA System; the University of Arkansas at Pine Bluff ("UAPB"); Calvin Johnson, the Chancellor of UAPB; and Elbert Bennett, the

Director of Student Affairs of UAPB. Ms. Bass, a former employee of UAPB, alleges unlawful employment discrimination.

Ms. Bass filed her original complaint *pro se* on July 26, 2012 (Dkt. No. 1). Ms. Bass in her original complaint states she was discriminated against from 1996 through July 25, 2011, on the basis of her race, sex, and age and then retaliated against in the following ways:

> Defendants effectively usurped the Plaintiff['s] function and demoted her as Director of Student Health Services; acted to harass and create a hostile, oppressive work environment for plaintiff; denied Plaintiff equal pay under the Equal Pay Act, including fair and equal fringe benefits, opportunity for participating in retirement, savings and other annuity and retirement programs offered by the University System.

(Dkt. No. 1, ¶¶ 7, 10). Ms. Bass's original complaint goes on to allege that, beginning in 2006, her supervisor, Mr. Bennett, with the approval or acquiescence of his supervisors, carried and still carries out a pattern and practice of unlawful behavior. She alleges that defendants "undermined and usurped and assigned to a younger employee [Ms. Bass's] authority and function as the Director of Student Health Services at UAPB . . . ." (*Id.*, ¶ 11). In her original complaint, Ms. Bass alleges violations of Title VII, 42 U.S.C. § 1981, the Arkansas Civil Rights Act, and Ark. Code Ann. § 16-123-101 *et seq.*, and she seeks relief under 42 U.S.C. § 2000e-5 (codifying enforcement provisions for Title VII).

Ms. Bass's counsel entered an appearance on October 1, 2012 (Dkt. No. 10). On October 10, 2012, the parties filed their Rule 26(f) report proposing that mandatory disclosures be made on or before October 29, 2012, and that a deadline of April 15, 2013, be set for joining other parties and amending the pleadings (Dkt. No. 11). On October 25, 2012, the Court entered its Final Scheduling Order, in which the Court set this case for a bench trial for the week of February 24, 2014, and set a deadline of September 2, 2013, for the parties to seek leave to amend pleadings (Dkt. No. 12). There was no further action on the docket until September 10,

2013, when Ms. Bass filed her amended complaint without first filing a motion for leave to amend pursuant to Local Rule 5.5(e) (Dkt. No. 13).  That same day, Ms. Bass also filed her interrogatories and requests for production of documents to defendant (Dkt. No. 14) [1] and her initial disclosure under Rule 26(a)(1) (Dkt. No. 15).[2]

Defendants then filed the instant motion to strike Ms. Bass's amended complaint (Dkt. No. 16).  They argue that Ms. Bass's amended complaint was filed without defendants' consent, without leave of the Court, and beyond the Court's deadline for amending pleadings, in violation of the Court's Final Scheduling Order.  Defendants also protest that it raises substantially new allegations and pleads new causes of action.  On September 25, 2013, Ms. Bass filed her response and moved to withdraw her amended complaint in view of her failure to file a motion for leave to amend (Dkt. No. 18).  She simultaneously filed a motion for leave to amend, attaching the same amended complaint (Dkt. No. 19).

Defendants contend that Ms. Bass's proposed amended complaint seeks to add claims under 42 U.S.C. § 1985 (conspiracy claim), the Family Medical Leave Act ("FMLA"), the Age Discrimination in Employment Act ("ADEA"), the Lilly Ledbetter Fair Pay Act of 2009, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and various state-law claims, including breach of contract, defamation, intentional infliction of emotional distress, outrage, wrongful discharge, and a violation of the State Administrative Procedures Act.  Defendants also contend that Ms. Bass's amended complaint seeks to add new factual allegations

---

[1] Ms. Bass's interrogatories and requests for production of documents should not have been filed at that time because they were not yet being used in a proceeding and the Court had not ordered the filing of these discovery requests.  *See* Fed. R. Civ. P. 5(d)(1).

[2] Ms. Bass's initial disclosure lists 34 individuals likely to have discoverable information that may be used to support her claims (Dkt. No. 15).  Ms. Bass's initial disclosure is incorrectly referred to on the docket as a witness list pursuant to Rule 26(a)(3)(A)(ii).  Defendants now complain to the Court that Ms. Bass was late in producing her initial disclosures, but defendants filed no motion to compel.

of the UA System and UAPB's "systematic and system-wide policies, practices and procedures of employment discrimination against blacks, females and aged employees . . . ." (Dkt. No. 19-1, ¶ 5).  In addition, defendants allege that her amended complaint seeks to add allegations regarding events that occurred after she filed her original complaint, including her termination from her employment in April 2013.  Lastly, defendants point out that Ms. Bass's amended complaint requests a jury trial and seeks the additional relief of "reinstatement with back pay, front pay and benefits" and punitive damages.

**II.     Discussion**

After the opposing party has filed a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  While the court should freely give leave when justice so requires, "parties do not have an absolute right to amend their pleadings, even under this liberal standard."  *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008).  The court may deny leave to amend if "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."  *Id*.  (quotation marks omitted).

However, when a party seeks leave to amend a pleading outside the deadline established by the court's scheduling order, the party must satisfy the good-cause standard of Rule 16(b)(4) rather than the more liberal standard of Rule 15(a).  *Sherman*, 532 F.3d at 715.  The "interplay between Rule 15(a) and Rule 16(b) is settled in this circuit."  *Id*. at 716.  "If a party files for leave to amend outside of the court's scheduling order, the party *must* show cause to modify the schedule."  *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) (citing Fed. R. Civ. P. 16(b)) (emphasis added).  In these circumstances, "the application of Rule 16(b)'s good-cause

standard is not optional." *Sherman*, 532 F.3d at 716. "To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) would render scheduling orders meaningless and effectively . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Id*. (internal quotation marks omitted). The primary measure of Rule 16's good cause standard is the moving party's diligence in attempting to meet the case management order's requirements. *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001); *see also* Fed. R. Civ. P. 16(b), advisory committee note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). "In short, 'good cause' for a belated amendment under Rule 16(b) requires a showing that, despite the diligence of the movant, the belated amendment could not reasonably have been offered sooner." *Transamerica Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, 590 F. Supp. 2d 1093, 1100 (N.D. Iowa 2008) (citing *Sherman,* 532 F.3d at 716–18).

The existence or degree of prejudice to the party opposing the modification may also be relevant, but the court need not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. *Sherman*, 532 F.3d at 717. The Eighth Circuit's cases reviewing Rule 16(b) rulings "focus in the first instance (and usually solely) on the diligence of the party who sought modification of the order." *Id*. (determining no good cause for defendants' motion to amend to plead an affirmative defense 17 months after the deadline where "no change in the law, no newly discovered facts, or any other changed circumstance made the preemption defense more viable after the scheduling deadline for amending pleadings."); *Barstad v. Murray County,* 420 F.3d 880, 883 (8th Cir. 2005) (affirming the district court's denial of plaintiffs' motion for leave to amend their complaint two months after the deadline because plaintiffs had

eight months to request an amendment of the scheduling order and "knew of the claims they sought to add when they filed the original complaint . . . ."); *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (affirming the district court's denial of plaintiff's untimely motion to amend her complaint to add a claim for punitive damages because she provided no reason why punitive damages could not have been earlier alleged or why her motion to amend was filed so late).

As to good cause, Ms. Bass states that she filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination on April 18, 2012, received a right-to-sue notice from the EEOC on May 1, 2012, and then began a grievance process with defendants that concluded on June 11, 2012. She maintains that, soon thereafter, settlement talks began and continued through early April 2013. On her own, Ms. Bass filed suit July 8, 2012, to ensure her ability to pursue her claims through litigation, even though the parties were engaged in talks to resolve their dispute at the time. Ms. Bass hired counsel on October 20, 2012.

When settlement discussions stalled, according to Ms. Bass, she came under "more systematic, more blatant and more hostile harassment from Defendants." (Dkt. No. 21, at 2). In April 2013, a charge of discrimination was leveled against Ms. Bass by a subordinate whose employment, Ms. Bass claims, "was central to the conflict" between Ms. Bass and her supervisor (*Id.*). Another grievance process was instituted, but this one followed a different procedure Ms. Bass characterizes as "totally different and more bizarre" than the grievance process offered to her (*Id.*). Ms. Bass also claims that, although not recommended by the grievance committee through the grievance process, she was fired (*Id.*).

Based on these events, Ms. Bass claims that it was not until her counsel had time to review her original complaint and other documents and contact witnesses that counsel was "in a position to draft and file the Amended Complaint and fashion appropriate discovery requests."

(Dkt. No. 21, at 2). Ms. Bass further alleges that, after filing her original complaint, she was "met with a barrage of more insidious on-the-job discrimination, i.e. was suspended, which are major changes in circumstances." (*Id*. at 3). She asserts that her motion to amend was timely filed after these changes "were fully realized." (*Id*. at 4). Here, the deadline for seeking leave to amend the complaint as set forth in the Court's Final Scheduling Order was September 2, 2013. Ms. Bass filed her amended complaint on September 10, 2013, eight days after the Court's deadline to do so.

Defendants argue that the facts upon which Ms. Bass bases her claims are not new to her and easily could have been asserted shortly after her termination (Dkt. No. 20, at 5). The Court observes that, while the parties disagree on the date of Ms. Bass's termination, her termination appears to have occurred in either April or May 2013. Defendants note that Ms. Bass's new allegations are not based on anything learned through discovery, as no discovery had yet been conducted by the time the amended complaint was filed September 10, 2013. Defendants contend that Ms. Bass sat on her claims rather than diligently pursuing them (Dkt. No. 20, at 5).

The Court finds that Ms. Bass has demonstrated good cause. Given the facts and circumstances of this matter which Ms. Bass has characterized as on-going and evolving to the point of her termination, which occurred after she filed her original complaint, and giving due consideration to the timing of Ms. Bass's filing the amended complaint, which the Court observes was only eight days after the Court's deadline for amendments, the Court determines Ms. Bass should be permitted leave to amend.

As to prejudice, the Eighth Circuit has stated, "Where an amendment would likely result in the burdens of additional discovery and delay to the proceedings, a court usually does not

abuse its discretion in denying leave to amend." *See Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000). Here, the Court acknowledges that Ms. Bass's amended complaint will add to the discovery burdens in this case in that she seeks to add several causes of action that defendants claim were not raised in her original complaint, but certain of these claims appear based on events that occurred after the filing of her original complaint. Moreover, many of these claims appear based on the same operative facts as those alleged in her original complaint and to require the participation in discovery of many of the same individuals as witnesses. The Court also recognizes that there is now little risk of further delay given the continuance of the trial of this matter based on the parties' joint request.

The Court also notes that certain of the claims to which defendants object—for example claims based on the Lilly Ledbetter Fair Pay Act of 2009 and the ADEA—are not actually new claims. These claims were fairly raised by Ms. Bass in her original complaint. For this reason, the Court rejects defendants' request and, at this time, will not Court deny Ms. Bass the opportunity to amend based on futility. Giving due consideration to Ms. Bass's diligence in meeting this Court's deadlines and the degree of prejudice likely to result, especially given the joint request for a continuance of the trial date, the Court grants Ms. Bass's request for leave to amend.

* * *

Defendants' motion to strike is denied as moot (Dkt. No. 16), and the Court strikes from the record Ms. Bass's amended complaint (Dkt. No. 13). Ms. Bass's motion to amend her complaint is granted (Dkt. No. 19), and she has ten days from the date of this Order to file her amended complaint.

SO ORDERED this the 17th day of December, 2013.

_____
Kristine G. Baker
United States District Judge