**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

LETSIE BASS                                                                                    PLAINTIFF

v.                                        **Case No. 5:12-cv-00286-KGB**

UNIVERSITY OF ARKANSAS
AT PINE BLUFF, *ET AL.*                                                       DEFENDANTS

## OPINION AND ORDER

Plaintiff Letsie Bass brings this action against defendants the University of Arkansas at Pine Bluff ("UAPB"); the University of Arkansas System ("UA System"); Donald Bobbitt, President of the UA System; Carl Johnson (originally named as Calvin Johnson), UAPB Chancellor; and Elbert Bennett, Director of Student Affairs at UAPB.  Ms. Bass asserts multiple causes of action arising out of alleged employment discrimination on the basis of race, age, and gender.

Before the Court is defendants' motion for judgment on the pleadings (Dkt. No. 28).  Defendants' motion for judgment on the pleadings is addressed to Ms. Bass's original complaint and is denied as moot in view of Ms. Bass's filing of a first amended complaint (Dkt. No. 31).

Also before the Court is defendants' motion to dismiss Ms. Bass's first amended complaint (Dkt. No. 32).  Ms. Bass has responded to the motion (Dkt. No. 36), and defendants have replied (Dkt. No. 38).  For the reasons below, the Court grants in part and denies in part defendants' motion to dismiss Ms. Bass's first amended complaint.

### I.      Background

Ms. Bass alleges that the UA System and UAPB engaged in "systematic, systemwide, policies, practices and procedures of employment discrimination against blacks, females and aged employees" (Dkt. No. 31, ¶ 5).  Ms. Bass alleges that she was subjected, on the basis of her

gender, race, and age, to:  "(a) disparate treatment in hiring, promotion and advancement; (b) disparate pay; (c) differential treatment and general conditions of employment; (d) hostile work environment; (e) retaliation, and dismissal for her resistance to such disparate treatment," which she claims is in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights of 1991 and the Lilly Ledbetter Fair Pay Act of 2009, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; the Equal Pay Act ("EPA"), 29 U.S.C. § 206; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*;  and 42 U.S.C. §§ 1981, 1983, and 1985 (*Id.*, ¶ 6).  She further asserts due process and equal protection claims on the basis that she "was subjected to arbitrary and capricious state actions" (*Id.*).  Ms. Bass also alleges state law claims for gender, age, and race discrimination under the Arkansas Civil Rights Act of 1993 ("ACRA"), § 16-23-101 *et seq.*; a claim of "arbitrary and capricious State action detrimental to Plaintiff in violation of State Administrative Procedures Act"; and common law claims for breach of contract, defamation, outrage, and wrongful discharge (*Id.*).

According to her first amended complaint, Ms. Bass was employed as the Director of Student Health Services at UAPB from her hiring in August 1996 until her discharge in April 2013.  She claims that she performed her duties satisfactorily until her discharge and that she worked without incident until 2006, when Mr. Bennett became the Coordinator of Student Affairs at UAPB and Ms. Bass's immediate supervisor (Dkt. No. 31, ¶13).

Ms. Bass asserts that, under the supervision of Mr. Bennett, defendants denied her "equal pay, benefits and administrative support equal to that of similarly situated Directors of Student Health Services within the University of Arkansas System who are not minority employees" and denied her participation in savings, annuity and retirement programs made available to "similarly

situated non-protected class employees of the University of Arkansas System." (Dkt. No. 31, ¶ 14). She alleges that she was hired at a pay rate less than the pay rate authorized for her position within the UA System; that she did not receive a raise or bonus prior to 2009, despite regular requests; and that Mr. Bennett refused to raise her pay or recommend a pay raise to make Ms. Bass's pay equal to that of other student health services directors in the UA System and other directors in the UAPB student affairs department (*Id.*, ¶ 14(b)). She further claims that the Chancellor, Dr. Johnson, was slow, or failed, to address or act on Ms. Bass's complaints regarding pay inequity (*Id.*, ¶ 14(c)).

Ms. Bass also claims that she worked under conditions in which her area was severely understaffed as compared to the areas of similar directors and that, as a result, she was unable, or not allowed by Mr. Bennett, to take time off. She asserts that she lost hundreds of hours of accumulated personal leave, holiday leave, and accrued overtime as a result (Dkt. No. 31, ¶ 14(b)). In addition, she claims that Mr. Bennett harassed her after she took four days of leave in May 2009 while her assistant was also out of the office, which resulted in the health center being closed for several days. Ms. Bass alleges that she complained to the Chancellor about Mr. Bennett's behavior but that the Chancellor did not respond. She asserts that she did not file a formal grievance due to the Chancellor's inaction and the increase in hostility from Mr. Bennett "on the earlier grievance" (*Id.*, ¶ 14(d)).

Ms. Bass alleges that Mr. Bennett, "with the approval or acquiescence of his supervisors, including all Defendants named herein, undertook and carried out a pattern and practice of conduct in violation of established Federal and State Constitutions and Laws, and of University regulations and policy" (Dkt. No. 31, ¶ 15). She claims that Mr. Bennett "undermined, usurped and, assigned" her authority and function as the Director of Health Services to a younger

employee and subordinate; harassed and belittled Ms. Bass alone and in the presence of others; countermanded Ms. Bass's directions on matters that should have been under Ms. Bass's authority; and overrode Ms. Bass's customary role in selecting subordinate medical staff by selecting unqualified, younger employees, all of which Ms. Bass claims hindered the performance of her duties (*Id.*).

Ms. Bass further alleges that, within months of his hiring, Mr. Bennett made comments in a staff meeting expressing concern that the deans and directors of his departments were over the age of 50 and "old" (Dkt. No. 31, ¶ 15(b)).  Ms. Bass claims that the deans and directors who were at this meeting who were over the age of 50 have all been terminated or replaced by younger workers and the females replaced by males.  Ms. Bass claims that Mr. Bennett harassed, ridiculed, and bullied her on multiple occasions between 2006 and 2013 (*Id.*, ¶ 15(c)).  She raises various other alleged instances of hostility from Mr. Bennett, although she does not specifically mention any improper motivations for these actions (*Id.*, ¶ 15(d) – (g)).  She claims that she wrote the UAPB Chancellor, Dr. Johnson, following the "many confrontational actions" by Mr. Bennett (*Id.*, ¶ 16).

Ms. Bass alleges that Mr. Bennett effectively usurped her position as Director of Student Health Services and effectively demoted her (Dkt. No. 31, ¶ 17).  She bases this on various allegations regarding a nurse, Ms. Holmes, whom Mr. Bennett allegedly hired in September 2011 over Ms. Bass's objections and outside of proper hiring procedure.  Ms. Bass claims that Mr. Bennett made Ms. Holmes Ms. Bass's permanent assistant in December 2011.  She alleges that Ms. Holmes engaged in insubordination and hostility that Mr. Bennett openly encouraged. Ms. Bass states that she filed a grievance in December 2011 that Dr. Johnson refused to address meaningfully (*Id.*, ¶ 17(a)-(d)).

Ms. Bass claims that, while she was on Family and Medical Leave in March 2012, Mr. Bennett and Ms. Homes made major changes in the Student Services Operating Procedures without Ms. Bass's input or knowledge.  Ms. Bass claims these changes essentially assigned her authority to Ms. Holmes (Dkt. No. 31, ¶ 17(e)).  Ms. Bass further alleges that Mr. Bennett and unnamed others encouraged Ms. Holmes in late 2012 and early 2013 to initiate her own grievance alleging harassment against Ms. Bass.  Ms. Bass maintains that, unlike when addressing her December 2011 grievance, Dr. Johnson promptly scheduled Ms. Holmes's grievance for a hearing.  Ms. Bass claims that Ms. Holmes's grievance hearing was conducted in a manner that was designed to favor Ms. Holmes and that, as a result, the panel determined that Ms. Bass had harassed Ms. Holmes and imposed certain restrictions (*Id.*, ¶ 17(f)-(i)).

Ms. Bass alleges that she was required to evaluate Ms. Holmes in December 2012 and that, after giving Ms. Holmes demerits, Mr. Bennett badgered Ms. Bass and insisted she give Ms. Holmes a more favorable evaluation.  Ms. Bass alleges that, from January 2013 until her termination, she complained of Ms. Holmes's insubordination and disruption of Ms. Bass's duties.  She maintains that, in response, Mr. Bennett directed her "to come to work but 'be on vacation' i.e. stay out of Holmes' way."  (Dkt. No. 31, ¶ 18).

Ms. Bass states that she was terminated on April 19, 2013, without discussion, and told to leave campus immediately.  She states that she was terminated "supposedly for violations of the corrective actions, but without explanation of the circumstances of the purported violation."  (*Id.*, ¶ 19).  Ms. Bass does not specify the "corrective actions" to which she refers.  She does not provide any other details regarding her termination.

Ms. Bass alleges that she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 26, 2012.  Her Form 5 EEOC charge and intake

questionnaire are attached to her original complaint (Dkt. No. 1) and are discussed in more detail below.

## II.     Legal Standard

Defendants move to dismiss Ms. Bass's first amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  To survive a motion to dismiss under Rule 12(b)(6), a complaint must satisfy the pleading requirement of Rule 8(a)(2), which requires that a complaint present "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).  However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden*, 588 F.3d at 594 (quoting *Iqbal*, 556 U.S. at 678).

III.     Parties

Defendants first move to dismiss Ms. Bass's claims against UAPB arguing that it is not a legal entity capable of being sued.  UAPB is a campus of the University of Arkansas and is under the management and control of the University of Arkansas's Board of Trustees.  Ark. Code Ann. § 6-64-303.  Because UAPB is merely a campus of the University of Arkansas, it is not a legal entity capable of being sued.  *See McCullough v. Univ. of Ark. for Med. Sciences*, 559 F.3d 855, 860 n.2 (8th Cir. 2009) ("UAMS lacks the capacity to sue or be sued, because it is a campus of the University of Arkansas and not a separate institution or corporate body."); *Greenwood v. Ross*, 778 F.2d 448, 449 n.1 (8th Cir. 1985) (The University of Arkansas at Little Rock "is a component of the University of Arkansas.  Arkansas state law designates the Board of Trustees of the University of Arkansas as the entity capable of being sued."); *Assaad-Faltas v. Univ. of Ark. for Med. Sciences*, 708 F. Supp. 1026, 1029 (E.D. Ark. 1989) ("UAMS is not a separate institution or a corporate body which has the capacity to sue or be sued.  Therefore, all allegations directed at UAMS are dismissed for failure to state a claim upon which relief can be granted."), *aff'd*, 902 F.2d 1572 (8th Cir. 1990).  The Court grants defendants' motion to dismiss UAPB as a defendant.

Ms. Bass states that, if the Court accepts defendants' argument, all claims pleaded against UAPB should be treated as if pleaded against the UA System.  Defendants reply that the UA System is not a proper party and that the proper party would be the Board of Trustees for the University of Arkansas.  The Court agrees with defendants' position, but issues persist.  In her original complaint, in the body of the original complaint, Ms. Bass named as a party defendant the "University of Arkansas System, through [its] Board of Trustees" (Dkt. No. 1, at 2, ¶ 3).  However, she did not identify the Board of Trustees in the style of her original complaint, the

docket sheet does not mention the Board of Trustees, and it does not appear to the Court that the Board of Trustees was ever properly made a party to this suit.  Although Ms. Bass's first amended complaint lists the "the UA System" as a party, it does not refer to the Board of Trustees (Dkt. No. 31, ¶ 8).  The Board of Trustees is not mentioned anywhere in her first amended complaint.  Ms. Bass did not list among her reasons for requesting leave to amend that she wanted to alter the parties sued, but she makes no argument as to whether she intended to make the Board of Trustees a defendant in the first place and whether naming as a defendant the University of Arkansas System was sufficient to include the Board of Trustees.

Because Ms. Bass properly named the University of Arkansas System, through its Board of Trustees, as a defendant in her original complaint (Dkt. No. 1) and persisted in naming the University of Arkansas System as a defendant in all amended complaints, this Court will permit Ms. Bass's claims against the University of Arkansas System, through its Board of Trustees, to proceed.  *See Martin v. Univ. of Arkansas for Med. Sciences*, No. 4:08CV03617 JMM, 2008 WL 5231115, at *1 (E.D. Ark. 14, 2008) ("The Defendant is correct that UAMS is not an entity capable of being sued.  Rather, Plaintiff should have named the University of Arkansas or the Board of Trustees of the University of Arkansas as the defendant in this case." (citation omitted)).  The Court denies defendants' motion to dismiss the University of Arkansas System as a defendant in this case and construes Ms. Bass's first amended complaint as naming the University of Arkansas System through its Board of Trustees as a defendant in this matter.

Defendants also move to dismiss all claims against Dr. Johnson, asking the Court to take judicial notice of the fact that Dr. Johnson served as UAPB's Interim Chancellor until June 30, 2013, and is no longer in any position with the UAPB or any position in which he can provide injunctive relief (Dkt. No. 33, at 17).  Ms. Bass's complaint does not state a clear intention to

plead individual capacity claims and thus names the individual defendants in their official capacities only.  *See Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997).  Moreover, Ms. Bass named Dr. Johnson as "Carl [sic] Johnson (or his predecessor in office)" (Dkt. No. 31, ¶ 9). Ms. Bass claims in her response to defendants' motion to dismiss that any official-capacity liability, if present, would lie with Dr. Johnson's successor.  However, she asserts that individual liability remains with Dr. Johnson and states that she will move to amend her pleadings to state claims against all defendants in their individual capacities.  To date, she has not made such a request to amend through a formal motion, and defendants indicated in their reply that they oppose such an amendment.  The Court recognizes official capacity claims against those currently holding the positions of Chancellor of the University of Arkansas – Pine Bluff and the Coordinator of Student Affairs of the University of Arkansas – Pine Bluff.[1]  The Court finds that Ms. Bass has not pleaded individual capacity claims against any named defendant.

Rule 25(d) of the Federal Rules of Civil Procedure provides that, when a public officer who is a party to an action in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party.  The Court may order substitution at any time, but the absence of such an order does not affect the substitution.  *Id.*  The Court takes judicial notice that Dr. Laurence B. Alexander is UAPB's current Chancellor.  Dr. Alexander is automatically substituted for Dr. Johnson pursuant to Rule 25(d).  Because Ms. Bass has not pleaded any individual capacity claims against Dr. Johnson,

---

[1] In her original complaint, Ms. Bass also named as a defendant Donald Bobbitt, President of the UA System.  In her first amended complaint, however, Ms. Bass does not list as a defendant, or otherwise mention, Dr. Bobbitt or the President of the UA System.  Nonetheless, the parties proceed as if Dr. Bobbitt, in his official capacity, is still a party to this suit, and defendants refer to Dr. Bobbitt in their filings as a named defendant.

Dr. Johnson is no longer a party to this action.  Accordingly, defendants' motion to dismiss as to Dr. Johnson is granted consistent with this Order.

The advisory committee's notes to Rule 25 provide in part:

> Where the successor does not intend to pursue the policy of his predecessor which gave rise to the lawsuit, it will be open to him, after substitution, as plaintiff to seek voluntary dismissal of the action, or as defendant to seek to have the action dismissed as moot or to take other appropriate steps to avert a judgment or decree.

Fed. R. Civ. P. 25 advisory committee's note to 1961 amendments.  *See also Tara Enters. v. Humble*, 622 F.2d 400, 401-02 (8th Cir. 1980).  Defendants do not address Rule 25(d) or whether Ms. Bass may seek to assert against Dr. Alexander claims based on Dr. Johnson's alleged conduct.  The parties may address this issue by separate motion.

### IV.   Federal Claims.

#### A.   42 U.S.C. §§ 1981 And 1983

The Court considers together Ms. Bass's claims under 42 U.S.C. §§ 1981 and 1983 because a federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983.  *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998).

Defendants move to dismiss Ms. Bass's § 1983 claims as barred by the Eleventh Amendment.  The sovereign immunity enjoyed by states and recognized in the Eleventh Amendment bars private parties from bringing actions for damages against unconsenting states in federal courts.  *Thomas v. St. Louis Bd. of Police Comm'rs*, 447 F.3d 1082, 1084 (8th Cir. 2006).  "The State of Arkansas did not waive its immunity, nor did Congress abrogate that immunity when it enacted § 1983."  *McCoy v. Carter-Jones Timber Co.*, 352 F. App'x 119, 121 (8th Cir. 2009) (citing *Hadley v. N. Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996)).  The Eleventh Amendment bars suit against the UA System for any kind of relief.  *Monroe v. Ark.*

*State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007).  Sovereign immunity also applies to a suit against state employees in their official capacities, which is the functional equivalent of a suit against the State.  *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (citations omitted).  However, under the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), state officials may be sued in their official capacities for prospective, injunctive relief to remedy ongoing violations of federal law.  *Monroe*, 495 F.3d at 594.

The Court grants defendants' motion to dismiss Ms. Bass's § 1983 claims against the UA System, through its Board of Trustees, and her § 1983 claims for money damages against the individual defendants in their official capacities; these claims are barred by the Eleventh Amendment and dismissed with prejudice.  Because Ms. Bass's complaint alleges no individual capacity claims, her only remaining § 1983 claims are her claims for prospective injunctive relief against the individual defendants in their official capacities.

Defendants also move to dismiss as time-barred any § 1983 claim based on conduct occurring prior to July 26, 2009.  Ms. Bass's § 1983 claims are governed by Arkansas's general personal-injury statute of limitations, which is three years.  *Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992).  The Court grants defendants' motion to dismiss based on the statute of limitations as to any § 1983 claims based on conduct occurring prior to July 26, 2009, and these claims are dismissed with prejudice.

Defendants also move to dismiss Ms. Bass's § 1983 claims against the UA System, Dr. Bobbitt, and Dr. Johnson, arguing that Ms. Bass's § 1983 claims are based on the alleged actions of Mr. Bennett and a theory of *respondeat superior*.  Because the UA System is immune to Ms. Bass's § 1983 claims, the Court need only consider this argument as to Dr. Bobbitt and Dr. Johnson, to the extent that the parties have not addressed the liability of Dr. Johnson's successor.

The doctrine of *respondeat superior* does not apply to § 1983 cases. *Iqbal*, 556 U.S. at 676; *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Nonetheless, "a supervisor may still be liable under § 1983 if either his direct action or his 'failure to properly supervise and train the offending employee' caused the constitutional violation at issue." *Jackson*, 747 F.3d at 543 (quoting *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2011) and citing *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989)). "Even if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in 'creating, applying, or interpreting a policy' that gives rise to unconstitutional conditions." *Id.* (quoting *Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009)). "In requiring a plaintiff to allege that each defendant was personally involved in the deprivation of his constitutional rights, we assess each defendant relative to his authority over the claimed constitutional violation." *Id.*

The majority of Ms. Bass's allegations are directed at Mr. Bennett. To the extent Ms. Bass makes a conclusory allegation that Mr. Bennett acted "with the approval or acquiescence of his supervisors, including all Defendants," Ms. Bass seeks to impose liability on Dr. Bobbitt and Dr. Johnson, or his successor, on a theory of *respondeat superior* (Dkt. No. 31, ¶15). Beyond this, Ms. Bass does not allege any actions on the part of Dr. Bobbitt; in fact, her complaint never specifically mentions Dr. Bobbitt. Accordingly, Ms. Bass has failed to state a plausible claim under § 1983 against Dr. Bobbitt, Dr. Johnson, or Dr. Johnson's successor. Therefore, the Court dismisses Ms. Bass's § 1983 claim against Dr. Bobbitt and Dr. Johnson, or his successor.

Defendants do not raise any other arguments as to Ms. Bass's § 1983 claims or challenge whether she sufficiently pleaded a claim under § 1983 against Mr. Bennett. Accordingly, this

case will proceed on Ms. Bass's § 1983 claim against Mr. Bennett in his official capacity, for prospective injunctive relief only.  However, Ms. Bass cannot proceed on her retaliation claim under § 1983.  A plaintiff may not bring a retaliation claim for complaining of discrimination under the guise of equal protection pursuant to § 1983.  *Burton v. Ark.s Sec'y of State*, 737 F.3d 1219, 1236-37 (8th Cir. 2013).

### B.      42 U.S.C. § 1985

Defendants move to dismiss Ms. Bass's § 1985 claims as barred by sovereign immunity. Sovereign immunity and the Eleventh Amendment bar Ms. Bass's claims under 42 U.S.C. § 1985.  *Gleghorn v. Melton*, No. CIV 04-6060, 2007 WL 1321838, at *3 (W.D. Ark. May 4, 2007), *aff'd*, 283 F. App'x 421 (8th Cir. 2008); *Cohen v. Neb. Dep't of Admin. Servs., Div. of Cent. Data Processing*, 83 F. Supp. 2d 1042, 1046 (D. Neb. 2000).  The Court grants defendants' motion to dismiss with prejudice as to Ms. Bass's § 1985 claims against the UA System, through its Board of Trustees, and her § 1985 claims for money damages against the individual defendants in their official capacities.

Defendants also move to dismiss any claims under § 1985 that are barred by the statute of limitations.  Like her § 1983 claims, Ms. Bass's § 1985 claims are governed by Arkansas's general three-year statute of limitations.  *Roach v. Owen*, 689 F.2d 146, 146-47 (8th Cir. 1982). Accordingly, claims based on alleged violations that occurred prior to July 26, 2009, are time-barred and, therefore, dismissed with prejudice.

As to any remaining claims under § 1985, defendants argue that Ms. Bass does not plead sufficiently a claim under § 1985.  To state a civil rights conspiracy claim under § 1985(3), Ms. Bass must allege (1) that the defendants did "conspire," (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal

privileges and immunities under the laws," (3) that one or more of the conspirators did, or caused to be done, "any act in furtherance of the object of the conspiracy," and (4) that another person was "injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States." 42 U.S.C. § 1985(3); *see Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 684 (8th Cir. 2012). "The 'purpose' element of the conspiracy requires that the plaintiff prove a class-based 'invidiously discriminatory animus.'" *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 & n.10 (1971)). Ms. Bass "must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Id.* To satisfy this burden, Ms. Bass must point to at least some facts which would suggest that defendants reached an understanding to violate her rights. *Id.*

Ms. Bass's only allegation directed at establishing a conspiracy is her claim that Mr. Bennett acted "with the approval and acquiescence of his supervisors, including all Defendants named herein," in allegedly undermining Ms. Bass's authority and verbally abusing and belittling her (Dkt. No. 31, ¶ 15). First, although defendants do not raise the issue, the Court notes that these allegations in paragraph 15 appear to be directed toward a claim of age discrimination, and the weight of authority suggests that the ADEA is the exclusive remedy for age discrimination. *See Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1056-57 (9th Cir. 2009) (collecting cases and noting that "every other circuit to consider the question" has held that "the ADEA is the exclusive remedy for age discrimination in employment claims[.]"); *see also Bradley v. Little Rock Wastewater Util.*, No. 4:10-CV-2019-DPM, 2012 WL 174382, at *1 (E.D. Ark. Jan. 20, 2012) (citing *Ahlmeyer*, holding that plaintiff could not pursue an ADEA claim through § 1983), *aff'd*, 517 F. App'x 530 (8th Cir. 2013); *Adair v. eStem Pub. Charter*

*Sch.*, No. 4:11-CV-541-DPM, 2012 WL 474019, at *2 (E.D. Ark. Feb. 14, 2012) (same as to §
1983 and § 1985 claims).

Regardless of whether Ms. Bass intends to assert a violation of a right protected by §
1985, the Court finds that Ms. Bass has pleaded only conclusory facts that are not sufficient to
suggest plausibly that defendants reached an agreement to violate her rights.   Accordingly,
defendants' motion to dismiss is granted as to Ms. Bass's § 1985 claim, and the Court dismisses
that claim without prejudice.

### C.   ADEA

Defendants move to dismiss Ms. Bass's ADEA claims on the basis of the Eleventh
Amendment.   The ADEA does not abrogate Eleventh Amendment immunity.   *Kimel v. Florida
Bd. of Regents*, 528 U.S. 62, 91 (2000) (holding that Congress did not validly abrogate the
States' sovereign immunity to suits by private individuals, in enacting the ADEA).

The Court recognizes that Ms. Bass could have a viable claim under the ADEA for
prospective injunctive relief against the individual defendants in their official capacities.   "Courts
in this circuit, including our own, have found prospective injunctive relief available to plaintiffs
who brought ADEA claims against state officials in their official capacities."   *Drye v. Univ. of
Ark. for Med. Sciences ex rel. Univ. of Ark. Bd. of Trs.*, No. 4:09CV00922 JLH, 2011 WL
288564, at *1 (E.D. Ark. Jan. 27, 2011) (citing *Hasty v. Neb. Dep't of Educ.*, No. 4:09CV3196,
2010 WL 1552855, at *5 (D.Neb. Apr. 15, 2010); *Fikse v. Iowa Third Judicial Dist. Dep't of
Corr. Servs.*, 633 F. Supp. 2d 682, 692 (N.D. Iowa 2009); *Jackson v. Univ. of Ark. for Med.
Sciences*, No. 4:08CV04234-WRW, 2009 WL 890518, at *1-2 (E.D. Ark. Mar. 31, 2009)).

However, defendants argue that Ms. Bass's claim for prospective injunctive relief under
the ADEA is moot because she is no longer employed by the UA System and because she failed

to file an EEOC charge for discriminatory or retaliatory discharge.   The Court considers defendants' exhaustion arguments below, which defendants raise with regard to both Title VII and the ADEA.   For the reasons stated below, the Court agrees with defendants that Ms. Bass failed to exhaust her administrative remedies under Title VII and the ADEA as to any discriminatory or retaliatory discharge claim.   Therefore, Ms. Bass does not have a viable ADEA claim based on her discharge for which she can seek prospective injunctive relief in the form of reinstatement.   For this reason, and because she alleges no individual capacity claims, her claims under the ADEA are dismissed.

### D.      Title VII And ADEA Exhaustion

Defendants move to dismiss for failure to exhaust administrative remedies Ms. Bass's sex, race, hostile work environment, discharge, and retaliation claims under Title VII, and her discharge and retaliation claims under the ADEA.   The Court will consider together exhaustion under Title VII and the ADEA, although the Court is mindful that the EEOC enforcement mechanisms for Title VII and the ADEA differ in some respects.   *See Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 393 (2008).

In order to assert a Title VII or ADEA claim, Ms. Bass must have first exhausted her administrative remedies by filing a charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred.   42 U.S.C § 2000e–5(e)(1); 29 U.S.C. § 626(d)(1)(B); *see Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 825-26 (8th Cir. 2009) (discussing together Title VII and ADEA charge filing requirements); *Shelton v. Boeing Co.*, 399 F.3d 909, 912 (8th Cir. 2005) (discussing ADEA charge filing requirements).   Exhaustion of administrative remedies is required under Title VII and the ADEA because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining

voluntary compliance and promoting conciliatory efforts.  *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994) (Title VII); *Shelton*, 399 F.3d at 912 (ADEA). "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge."  *Williams*, 21 F.3d at 223 (quoting *Babrocky v. Jewel Food Co. & Retail Meatcutters*, 773 F.2d 857, 863 (7th Cir. 1985)).

Failure to exhaust administrative remedies under Title VII is an affirmative defense that a defendant must prove.  *Miles v. Bellfontaine Habilitation Ctr.*, 481 F.3d 1106, 1107 (8th Cir. 2007) (per curiam).  Further, "[a] claim may not be dismissed under Rule 12(b)(6) or Rule 56 where questions of material fact exist as to the timeliness of the complainant's efforts to exhaust it."  *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 800 (8th Cir. 2011).  At the pleading stage, if there is a doubt as to whether a claim is timely exhausted due to differences in the alleged dates of discrimination between the EEOC charge and the complaint, the court should liberally construe the complaint in the plaintiff's favor.  *Williams v. Target Stores*, 479 F. App'x 26, 28 (8th Cir. 2012).

Defendants argue that Ms. Bass alleged only age discrimination in her charge of discrimination filed with the EEOC in April 2012 and that she failed to check boxes at that time indicating alleged discrimination on the basis of race or sex or alleged retaliation.  Defendants further argue that the particulars described in her charge mention nothing about race, sex, retaliation, hostile work environment, or pattern and practice discrimination.  In response, Ms. Bass argues that her intake questionnaire alleges sex discrimination and acts constituting a hostile work environment.  Defendants contend in their reply that this questionnaire cannot be

considered because it is unsigned, undated, and carries no indicia of being received by the EEOC or forming the basis for any investigation that the EEOC conducted.  Lastly, defendants argue that Ms. Bass failed to amend her April 2012 charge or to file a new charge to assert any Title VII or ADEA claim based on her termination in April 2013.  Ms. Bass does not address this argument.

At this stage of the proceedings, the Court will consider Ms. Bass's intake questionnaire. The lack of a verification or date is not necessarily fatal to considering the intake questionnaire to be a part of her charge.  First, the ADEA does not require that a charge be verified.  *See* 29 U.S.C. § 626; *Shempert v. Harwick Chem. Corp.*, 151 F.3d 793, 797 (8th Cir. 1998).  In contrast, Title VII requires that administrative charges "be in writing under oath or affirmation," 42 U.S.C. § 2000e-5(b), and the Eighth Circuit has consistently held that intake questionnaires which are neither signed under oath nor verified do not satisfy the statutory requirement for an administrative charge under Title VII, *Shempert*, 151 F.3d at 796 (refusing to allow verified charge to relate back to filing date of unverified intake questionnaire).  However, the Supreme Court's decision in *Edelman v. Lynchburg College*, 535 U.S. 106 (2002), appears to have overruled *Shempert* and related cases to the extent that the Supreme Court validated the EEOC regulation, 29 C.F.R. § 1601.12(b), permitting a charge to be amended to "cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein."  *See Brooks*, 655 F.3d at 801 (construing the holding of *Edelman*); *Sifferman v. Bd. of Regents, Se. Mo. State Univ.*, 250 F. Supp. 2d 1139, 1143 (E.D. Mo. 2003) (recognizing *Edelman*'s apparent overruling of *Shempert*, 151 F.3d 793).

Although Ms. Bass's intake questionnaire is undated, she indicated in the intake questionnaire that she had not previously filed a charge with the EEOC and checked the box

indicating her intent to file a charge, both of which suggest that her verified and dated charge was filed after the intake questionnaire was submitted (Dkt. No. 1, at 9).  Construing these facts in the light most favorable to Ms. Bass at this stage of the proceeding and determining for purposes of resolving this motion only that Ms. Bass filed her charge after her intake questionnaire was submitted, under the reasoning of *Edelman*, the failure to sign her intake form is not fatal to considering it as a part of her charge if she later perfected it by filing her Form 5 charge.  *Sifferman*, 250 F. Supp. 2d at 1143.

Turning to Ms. Bass's Form 5 charge and intake questionnaire attached to her original complaint, in her Form 5 charge, Ms. Bass refers to conflicts she encountered after an employee was appointed as a Registered Nurse ("RN") in Ms. Bass's department while Ms. Bass was on vacation in June 2011, claiming that she was not allowed to perform her duties as director over the RN and stating that she believed this was because of her age, in violation of the ADEA.  On her Form 5 charge, she only checked age discrimination; she did not check race, sex, or retaliation (Dkt. No. 1, at 11).  On her intake questionnaire, Ms. Bass checked sex and age discrimination; she did not check race or retaliation (Dkt. No. 1, at 7).  On her intake questionnaire, she states she began encountering problems when Mr. Bennett was hired as her supervisor in 2006, specifically referring to, and elaborating on, the conflicts that allegedly occurred after Mr. Bennett hired the RN in June 2011 while Ms. Bass was on vacation.  She uses the term "hostile work environment" in reference to these claims, and she attributes the discrimination to age and sex, stating that "age is a major factor" and that "females seem to be displaced more than males; younger employees are replacing older workers" (Dkt. No. 1, at 7, 10).

Based on the above, the Court concludes at this stage of the proceeding that this Court will not dismiss for failure to exhaust her administrative remedies Ms. Bass's sex and age discrimination and hostile work environment claims under Title VII and the ADEA, except as to certain discrete acts as discussed below.   The Court notes that, as discovery progresses, the parties may inquire into facts regarding these matters, including without limitation facts such as whether the EEOC actually received Ms. Bass's intake questionnaire and whether the intake questionnaire formed the basis for any EEOC investigation.   If appropriate based on discovery, the parties may raise by motion for summary judgment the issue of exhaustion as to her sex discrimination and hostile work environment claims.

The Court finds that Ms. Bass failed to exhaust her administrative remedies as to her Title VII race discrimination claim.   Her Form 5 charge and intake questionnaire do not mention race discrimination.   Ms. Bass does not contend otherwise.   In her response to defendants' motion to dismiss, she only argues that she "checked sex and age as grounds for her claim" on her intake questionnaire (Dkt. No. 36, at 15).   She does not make an argument as to race discrimination. The Court grants defendants' motion to dismiss as to Ms. Bass's Title VII race discrimination claims.

As to retaliation, Ms. Bass did not check retaliation on either her Form 5 charge or her intake questionnaire.   However, Ms. Bass argues that her intake questionnaire alleges numerous instances of retaliation.   Defendants fail to address specifically this argument or whether retaliation is sufficiently raised in the factual allegations listed on the intake questionnaire.   The Court denies without prejudice defendants' motion to dismiss as to Ms. Bass's retaliation claims purportedly raised in her EEOC charge.

However, the Court agrees with defendants that Ms. Bass failed to exhaust her administrative remedies as any Title VII or ADEA discrimination or retaliation claim specifically based on her termination on April 13, 2013.  As stated above, Title VII and the ADEA require Ms. Bass to file a charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred.  42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626 (d)(1)(A). Ms. Bass filed her Form 5 charge in April 2012 and apparently filed her intake charge around that time.  Ms. Bass does not allege or argue that she filed a subsequent EEOC charge after her termination a year later in April 2013.  Accordingly, defendants argue that Ms. Bass's Title VII and ADEA claims of discrimination and retaliation based on her termination in April 2013 are beyond the scope of her EEOC charge and are time-barred.

In response, Ms. Bass apparently seeks to invoke the continuing violation theory, referring to her EEOC charge as "a continuation complaint" (Dkt. No. 36, at 15).  At one time, the Eighth Circuit, like other circuit courts, permitted a finding that a subsequent retaliation claim growing out of an EEOC discrimination complaint was sufficiently related to be within the scope of the lawsuit.  *See Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 672 (8th Cir. 2006) (discussing *Wentz v. Maryland Casualty Co.*, 869 F.2d 1153 (8th Cir. 1989) (ADEA context)). However, the Supreme Court has since explained that the continuing violation theory does not encompass discrete acts of discriminatory or retaliatory conduct.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-15 (2002) (Title VII context).  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Id.* at 113.  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment

decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. "Each discrete act is a different unlawful employment practice for which a separate charge is required." *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012) (citing *Morgan*, 536 U.S. at 114). *See also Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 826 (8th Cir. 2009) (applying *Morgan* to Title VII and ADEA claims and stating that "[a] termination is a discrete act, not a continuing violation."); *Betz v. Chertoff*, 578 F.3d 929, 937-38 (8th Cir. 2009) (also applying *Morgan* in the ADEA context).

For the same reason, defendants argue that any acts occurring prior to 180-days before the EEOC charge was filed are time-barred. The Court agrees to the extent that prior and subsequent discrete acts are not actionable. *Morgan*, 536 U.S. at 115 ("All prior discrete discriminatory acts are untimely filed and no longer actionable."); *Richter*, 686 F.3d at 852-53 (finding *Morgan*'s holdings as to discrete acts equally applicable to incidents occurring after the filing of plaintiff's EEOC charge).

The Court notes that there are different standards for exhausting hostile work environment claims. The Supreme Court in *Morgan* went on to explain that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." 536 U.S. at 115. "The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* Because "incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim." *Id.* at 118. In order for the charge to be timely, Ms. Bass need only file a charge within 180 days of any act that is part of the hostile work environment. *Id. See also Betz*, 578 F.3d at 937-38 (in Title VII

and ADEA context, stating that "[t]he Supreme Court has held that the continuing violation doctrine applies in hostile work environment claims, where, although one incident may not support a claim, the claim may be supported by a series of incidents that occur over a period of time" (citing *Morgan* 536 U.S. at 122)).

Accordingly, because the Court concludes at this stage of the proceedings that Ms. Bass's hostile work environment claims under Title VII and the ADEA survive defendants' motion to dismiss, her entire hostile work environment claim is timely.  This does not, however, salvage Ms. Bass's Title VII and ADEA claims based on her termination in April 2013, as termination is an easily identifiable discrete act to which the continuing violation doctrine does not apply and for which a separate charge is required.  *Morgan*, 536 U.S. at 113-14; *Richter*, 686 F.3d at 851.

The Court notes that Ms. Bass named Mr. Bennett and Dr. Johnson as her supervisors. Supervisors may not be held individually liable under Title VII.  *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 931 (8th Cir. 2007).  However, public officials may be named as defendants in their official capacities under Title VII and are viewed as agents of the employer; the employer remains liable for the alleged Title VII violation committed by its agents.  *Walpole v. Univ. of AR*, No. 4:07CV00164-WRW, 2007 WL 4365533, at *1 (E.D. Ark. Dec. 10, 2007) (citing *Harvey v. Blake*, 913 F.2d 226, 227-28 (5th Cir. 1990); *In re Montgomery County*, 215 F.3d 367, 372-373 (3rd Cir. 2000)).  Because Ms. Bass sues the individual defendants in their official capacities only, her claims against the individual defendants are legally sufficient under Title VII to the extent the individual defendants are viewed as agents of the UA System and its Board of Trustees.

E.      **Equal Pay Act**

Ms. Bass asserts a claim of wage discrimination under the EPA.  Defendants move to dismiss, arguing that Ms. Bass has not sufficiently alleged a claim under the EPA.

Generally speaking, the EPA prohibits wage discrimination on the basis of sex.  29 U.S.C. § 206(d)(1); *Tenkku v. Normandy Bank*, 348 F.3d 737, 740 (8th Cir. 2003).  A *prima facie* case under the EPA requires a showing that plaintiff's employer discriminated on the basis of sex by paying different wages to employees of the opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  29 U.S.C. § 206(d)(1); *Price v. N. States Power Co.*, 664 F.3d 1186, 1192-93 (8th Cir. 2011).  "Equal pay for equal work is what the [statute] requires, and those elements are the focus of the prima facie case."  *Price*, 664 F.3d at 1192-93.  "Application of the Equal Pay Act depends not on job titles or classifications but on the actual requirements and performance of the job."  *Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 578 (8th Cir. 2006) (quoting *EEOC v. Universal Underwriters Ins. Co.*, 653 F.2d 1243, 1245 (8th Cir. 1981)).

Defendants argue that Ms. Bass has not alleged any facts that she was paid less than male workers for equal work because of her sex.  Defendants note that the only specifics Ms. Bass offers on her equal pay claim appear to be race-based, in that she alleges in paragraph 14 of her first amended complaint that "Defendants denied Plaintiff equal pay, benefits and administrative support equal to that of similarly situated Directors of Student Health Services within the University of Arkansas System *who are not minority employees* . . . ."  (Dkt. No. 31, ¶ 14) (emphasis added).  Ms. Bass's only other references to equal pay are her conclusory statements

in paragraph 17 of her first amended complaint that she was denied equal pay, without any elaboration as to why she believes this occurred.

In her response to defendants' motion to dismiss, Ms. Bass quotes the statutory text of 29 U.S.C. § 206(d)(1) and states that she has pleaded "that she was paid at a lower rate, and received fewer raises and bonuses than were male Directors of similarly situated [Directors of] Student Health Services with similar seniority." (Dkt. No. 36, at 18). Ms. Bass does not cite any potion of her first amended complaint in which these allegations appear. Ms. Bass never alleges in her first amended complaint that she was paid at a lower rate than *male* directors; as the only specific allegation she makes of pay disparity appears to be race-based, claiming that she was paid less than other directors "who are not minority employees." (Dkt. No. 31, ¶ 14). Ms. Bass may not amend her complaint in her response to defendants' motion to dismiss. *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989). Because Ms. Bass does not allege pay disparity between males and females, she fails to state a claim under the EPA. The Court grants defendants' motion to dismiss as to Ms. Bass's claims under the EPA.

## F.    FMLA

Defendants raise three grounds for dismissal of Ms. Bass's FMLA claim: sovereign immunity, the claimed insufficiency of her pleadings, and the statute of limitations.

The Court finds that Ms. Bass's FMLA claims are too unclear for the Court to determine whether the claims are barred by the Eleventh Amendment. Defendants are correct that States are entitled to Eleventh Amendment immunity against suits for alleged violations of the FMLA self-care provision, 29 U.S.C. § 2612(a)(1)(D). *Coleman v. Court of Appeals of Md.*, 132 S. Ct. 1327, 1332, 1338 (2012) ("[S]uits against States under this provision are barred by the States' immunity as sovereigns in our federal system" because Congress did not validly abrogate States'

sovereign immunity from suits for money damages in enacting the FMLA's self-care provision). However, States are not immune from suit for alleged violations of the FMLA's family-care provision, 29 U.S.C. § 2612(a)(1)(C). *See Nev. Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 730-32, 740 (2003) (holding that Congress validly abrogated State sovereign immunity for violations of the family-care provision, § 2612(a)(1)(C), which was enacted in response to gender discrimination in family-leave policies).

Here, it is not clear under what provision of the FMLA Ms. Bass seeks to recover damages. Her complaints are silent as to the reason she allegedly took or attempted to take leave under the FMLA. To the extent Ms. Bass asserts a claim based on the FMLA's self-care provision, defendants' motion to dismiss on the basis of the Eleventh Amendment is granted. Her claim based on the FMLA's self-care provision, if any, is dismissed as to the UA System, through its Board of Trustees, and to the extent she seeks money damages from the individual defendants in their official capacities.

To the extent Ms. Bass alleges claims based on the FMLA's family-care provisions or otherwise viable FMLA claims, the Court determines that Ms. Bass has not pleaded sufficiently a claim under the FMLA. The FMLA entitles a qualifying employee to 12 workweeks of leave during any 12-month period if the employee meets certain statutory requirements. 29 U.S.C. § 2612(a)(1). *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012). The Eighth Circuit has recognized three types of claims arising under two subsections of the FMLA dealing with prohibited acts: (1) "entitlement" claims, or "interference" claims, arising under § 2615(a)(1), which occurs when an employer takes action to avoid responsibilities under the FMLA such as refusing to authorize leave; (2) "retaliation" claims, arising under § 2615(a)(2), which occurs when an employer takes an adverse action against an employee for

opposing any practice made unlawful under the FMLA; and (3) "discrimination" claims, arising under § 2615(a)(1), which occurs when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA. *Brown v. City of Jacksonville*, 711 F.3d 883, 890-91 (8th Cir. 2013) (citing *Pulczinski*, 691 F.3d at 1005-06; *Lovland v. Emp'rs Mut. Cas. Co.,* 674 F.3d 806, 811 (8th Cir. 2012)).

"A claim under the FMLA cannot succeed unless the plaintiff can show that he gave his employer adequate and timely notice of his need for leave . . . ." *Rynders v. Williams*, 650 F.3d 1188, 1196 (8th Cir. 2011) (quoting *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 991 (8th Cir. 2005)). "An employee seeking FMLA leave must give the employer notice of the need for leave and indicate when she anticipates returning to work." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1015-16 (8th Cir. 2013) (citing *Scobey v. Nucor Steel–Ark.*, 580 F.3d 781, 789-90 (8th Cir. 2009)). When the leave is foreseeable, the employee must give at least 30 days' notice. 29 C.F.R. § 825.302(a). When the leave is not foreseeable, "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a).

The only specific reference to the FMLA in Ms. Bass's first amended complaint is her allegation in paragraph 17 that she was on FMLA leave in March 2012 when Mr. Bennett and Ms. Holmes made major changes in the Student Services Operating Procedures without Ms. Bass's input or knowledge, which she claims essentially assigned to Ms. Holmes much of Ms. Bass's authority as Director of Student Health Services (Dkt. No. 31, ¶ 17(e)). These allegations do not provide fair notice of the nature and basis of Ms. Bass's claim, and they are insufficient to state a claim under the FMLA upon which relief can be granted. Ms. Bass does not allege she was denied leave or that defendants interfered with her FMLA rights. To the extent she refers to

actions taken while she was on leave, she does not allege any facts suggesting that those actions were taken because of Ms. Bass's leave.  *See Brown*, 711 F.3d at 891 (stating that discrimination and retaliation claims require proof of the employer's discriminatory intent).  Beyond stating that she was "on FMLA leave," Ms. Bass's allegations are silent as to whether she provided timely and adequate notice of her need for leave under the FMLA.  *See Hager*, 735 F.3d at 1016 (reversing district court's denial of a motion to dismiss as to plaintiff's FMLA claims and holding that plaintiff failed to state an FMLA entitlement or discrimination claim where plaintiff's pleadings "at best suggest [defendant] was aware of her leave request immediately prior to the appointment.  [Plaintiff's pleadings] do not assert that she provided notice within thirty days or 'as soon as practicable under the circumstances.'  Nor do they assert that she indicated when she would return.").

The only other allegation in Ms. Bass's first amended complaint possibly pertaining to FMLA is Ms. Bass's allegation in paragraph 14(d) referring to actions Mr. Bennett took after Ms. Bass requested and took four days of leave in May 2009.  If Ms. Bass intended to raise an FMLA claim based on these allegations, that claim is time-barred even if the Court applies the three-year statute of limitations for alleged willful violations as Ms. Bass advocates.  *See* 29 U.S.C. § 2617(c)(1), (2).

In her response to defendants' motion to dismiss, Ms. Bass attempts to raise FMLA claims that are not stated in her first amended complaint.  First, she asserts that she has alleged that she was forced to return early from FMLA leave (Dkt. No. 36, at 13, 18).  Ms. Bass does not make such an allegation in her first amended complaint.  Ms. Bass also alleges in her response that, after she returned from leave, Mr. Bennett discourage any future exercise of FMLA rights by telling Ms. Bass "you stay in your office and act like you are on vacation" (*Id.* at 13).  Her

first amended complaint alleges that Mr. Bennett made such a statement, but her first amended complaint does not allege that this was in any way connected to the FMLA leave Ms. Bass allegedly took in March 2012 or to the FMLA in general.  Rather, Ms. Bass's first amended complaint alleges that this occurred in January 2013 in response to her complaints regarding her subordinate (Dkt. No. 31, ¶ 19).  Ms. Bass may not amend the allegations of her first amended complaint in her response to defendants' motion to dismiss.  *Morgan*, 868 F.2d at 995.

For these reasons, the Court grants defendants' motion to dismiss as to Ms. Bass's FMLA claims, and her FMLA claims are dismissed.

### V.     State Law Claims

Defendants also move to dismiss Ms. Bass's state-law claims on the basis of the Eleventh Amendment.  The Eleventh Amendment "applies with equal force to pendent state law claims." *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968 (8th Cir. 2000) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120-21 (1984)).  Further, the *Ex Parte Young* exception to Eleventh Amendment immunity does not apply to alleged violations of state law.  *Halderman*, 465 U.S. at 106.

"The test for determining whether a State has waived its immunity from federal court jurisdiction is a stringent one." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985).  A State "is deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Id.* at 239-40.  "The interests of Federalism require that such a waiver be clear and unequivocal." *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991); *Cooper*, 226 F.3d at 969.

Ms. Bass points to no authority for finding that Arkansas has waived its immunity from suit on her state law claims.  The weight of authority is to the contrary.  *See* Ark. Code Ann. §

16-123-104 ("Nothing in [the Arkansas Civil Rights Act of 1993] shall be construed to waive the sovereign immunity of the State of Arkansas."); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 447 (8th Cir. 1995) (finding university and its trustees, in their official capacity, immune from plaintiff's state law breach of contract action); *Weatherford v. Ark. State Univ.*, No. 3:09CV00071JMM, 2009 WL 4610400, at *2 (E.D. Ark. Dec. 2, 2009) (holding that claim based on defamation of character was barred by sovereign immunity); *Davenport v. Bd. of Trs. Univ. of Ark.*, No. 5:05CV00213 JLH, 2007 WL 1444278, at *2 (E.D. Ark. May 15, 2007) (dismissing official capacity claims of outrage as barred by the Eleventh Amendment); *Bd. of Trs. of Univ. of Ark. v. Burcham*, 2014 Ark. 61, at 1 (holding that complaint for wrongful termination was barred by sovereign immunity).

Ms. Bass's state-law claims against the UA System, through its Board of Trustees, and defendants in their official-capacities are barred by sovereign immunity.  Because she alleged no individual capacity claims, her state law claims are dismissed.  The Court need not address defendants' claims for state statutory immunity or other arguments for dismissal of the state law claims.

*      *      *

The Court denies as moot defendants' motion for judgment on the pleadings (Dkt. No. 28).  For the reasons stated above, the Court grants in part and denies in part defendants' motion to dismiss Ms. Bass's first amended complaint (Dkt. No. 32).  The Court rules as follows:

1.      The Court grants defendants' motion to dismiss UAPB as a defendant.

2.      The Court denies defendants' motion to dismiss the UA System as a defendant in this case and construes Ms. Bass's first amended complaint as naming the University of Arkansas System through its Board of Trustees as a defendant in this matter.

3.      The Court recognizes official capacity claims against those currently holding the positions of Chancellor of the University of Arkansas – Pine Bluff and the Coordinator of Student Affairs of the University of Arkansas – Pine Bluff.  Dr. Laurence B. Alexander, the current UAPB Chancellor, is automatically substituted for defendant Dr. Calvin Johnson.  Consistent with this Order, the Court grants defendants' motion to dismiss Dr. Johnson as a defendant.

4.      The Court grants defendants' motion to dismiss as to Ms. Bass's claims under 42 U.S.C. §§ 1981 and 1983.  The Court dismisses with prejudice Ms. Bass's §§ 1981 and 1983 claims against the UA System and for money damages against the individual defendants in their official capacities, as well as any §§ 1981 and 1983 claims based on conduct occurring prior to July 26, 2009.  Ms. Bass's remaining §§ 1981 and 1983 claims against Dr. Bobbitt and Dr. Johnson, or his successor, in their official capacities are dismissed without prejudice.  Ms. Bass's §§ 1981 and 1983 claims against Mr. Bennett in his official capacity, for prospective injunctive relief, will proceed.

5.      The Court grants defendants' motion to dismiss as to Ms. Bass's claims under 42 U.S.C. § 1985 and dismisses with prejudice Ms. Bass's § 1985 claims against the UA System, § 1985 claims against the individual defendants for money damages, and § 1985 claims based on conduct occurring prior to July 26, 2009.  The Court dismisses without prejudice all other § 1985 claims.

6.      The Court grants defendants' motion to dismiss as to Ms. Bass's ADEA claims and dismisses with prejudice Ms. Bass's ADEA claims.

7.      The Court grants defendants' motion to dismiss as to Ms. Bass's Title VII claims for race discrimination, as well as any claims based on Ms. Bass's termination in April

2013.  The Court denies the motion as to sex discrimination, retaliation, and hostile work environment claims that are within the scope of Ms. Bass's April 2012 EEOC charge.

8.      The Court grants defendants' motion to dismiss as to Ms. Bass's EPA claims and dismisses those claims without prejudice.

9.      The Court grants defendants' motion to dismiss as to Ms. Bass's FMLA claims. The Court dismisses with prejudice Ms. Bass's FMLA claims based on conduct occurring prior to July 27, 2009, and any claims based on the FMLA's self-care provision.  The Court dismisses without prejudice any remaining claims based on the FMLA's family-care provisions.

10.     The Court grants defendants' motion to dismiss with prejudice as to Ms. Bass's state law claims against the UA System, through its Board of Trustees, and defendants in their official capacities.

This case will proceed on Ms. Bass's claims under 42 U.S.C. §§ 1981 and 1983 against Mr. Bennett in his official capacity, for prospective injunctive relief only, and on Ms. Bass's Title VII sex discrimination, retaliation, and hostile work environment claims that are within the scope of her April 2012 EEOC charge.

SO ORDERED this the 16th day of September, 2014.

Kristine G. Baker
United States District Judge